# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| JUDY VALDEZ, § | |
|     Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:10-CV-0619-BF |
| § | |
| MICHAEL J. ASTRUE, § | |
| *Commissioner of the Social* § | |
| *Security Administration*, § | |
|     Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before United States Magistrate Judge Paul D. Stickney. (Order November 2, 2010.) Judy Valdez ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court has considered Plaintiff's Brief, filed July 20, 2010, Defendant's Brief, filed August 26, 2010, and Plaintiff's Reply Brief, filed September 9, 2010. Having reviewed the evidence of the parties in connection with the pleadings, the Court hereby AFFIRMS the decision of the Commissioner.

## I. BACKGROUND[1]

### A. *Procedural History*

Plaintiff filed an application for SSI, alleging a disability onset date of April 11, 2007, due to "back problems." (Tr. 104-10; 119.) Her application was denied initially and upon reconsideration. (Tr. 61-64; 72-74.) Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 75-76.) ALJ William B. Churchill presided over Plaintiff's hearing on March 31, 2009 in Dallas, TX. (Tr. 22-57.) Plaintiff appeared at the hearing with counsel and testified. (Tr. 24.)

The ALJ issued a decision finding Plaintiff "not disabled" on April 24, 2009. (Tr. 13-21.) Plaintiff filed a timely request for review by the Appeals Council, supplemented by additional

---

[1] The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

evidence. (Tr. 10; 436-41.) The Appeals Council denied Plaintiff's request for review on February 16, 2010. (Tr. 1-4.) Plaintiff filed the instant action in the Northern District of Texas on March 30, 2010, seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). (Doc. 1.)

### B. *Factual History*

1. Plaintiff's Age, Education, and Work Experience

Plaintiff's date of birth is October 2, 1963. (Tr. 104.) She has a tenth grade education and never obtained a high school diploma or general equivalency degree. (Tr. 25.) Plaintiff has no past relevant work. (Tr. 20.)

2. Medical Evidence

On May 2, 2006, Plaintiff visited the Ambulatory Center at Parkland Health & Hospital System and reported chronic back pain radiating down her leg. (Tr. 264.) She informed the treating physician that she has suffered from back pain for 13 years and has been told she has scoliosis. (Tr. 263-65.) The record shows she has a bullet lodged near her spine that cannot be removed due to its location. (*Id.*) An x-ray revealed curvature of her spine and the bullet. (*Id.*) The doctor prescribed Amitriptylene, an antidepressant, referred her to a spine clinic, and counseled her about weight loss and sleeping techniques. (*Id.*) The doctor noted that Plaintiff has experienced several incidents of trauma, including falling out of a truck and being run over by accident. (*Id.*)

On June 16, 2006, Plaintiff visited Parkland Hospital with pain in her lower back and left leg. (Tr. at 258-62.) Records show a limited range of motion with pain in her right hip. (*Id.*) An x-ray revealed mild sacroiliac degenerative changes on the right, moderate disc height loss at L2-L3, moderate discogenic degenerative changes at L5-S1, and mild multilevel degenerative changes in the lower thoracic spine. (*Id.*) The CT scan also showed degenerative changes at L2-L3 and L4-L5, endplate sclerosis, and a mild left disc bulge at L3-4. (Tr. 249.) The doctor prescribed a pain

medications, including Naproxen, Naprosyn, and Torodel at this time. (Tr. 257-262.) Plaintiff returned to Parkland on July 2, 2006, stating that the Naprosyn is not alleviating her pain. (Tr. 256.)

From August through December of 2006, Plaintiff visits Parkland Hospital and its pain clinic four more times for lower back pain radiating into her legs. (Tr. 217-38.) During this time, she reported feeling numbness in her legs and feet, severe tenderness in her lower back and hips, and a limited range of motion at her waist. (Tr. 225-226; 232.) She also reported waking up three to four times a night in pain and experiencing muscle spasms. (Tr. 217.) At each visit, Plaintiff was diagnosed with lumbar spondylosis and bilateral sacroiliitis. (Tr. 217-38.) She was also told that she has facet arthropathy in her lumbar spine. (*Id.*) She underwent bilateral L3-S1 median branch nerve blocks and bilateral sacroiliac joint injections. (*Id.*) Finally, she was also prescribed Etodalac, Elavil, Zanaflex, and Gabapentin. (Tr. 215-18; 227.)

Between January and June of 2007, Valdez went to Parkland Hospital eight times reporting back and leg pain. (Tr. 196-216.) During this time, she was diagnosed with lumbar spondylosis without myelopathy, myalgia, facet arthropathy, bilateral sacroiliitis, gluteal muscle spasms, and myositis. (*Id.*) Her prescription for Gabapentin was increased, as well as her Tizanidine. (*Id.*) She was also prescribed Amitriptyline, Celebrex, Tramadol, and Talopram. (*Id.*) She underwent an MRI, a radio frequency ablation, and a right gluteal muscle trigger point operation. (*Id.*) On June 29, 2007, she was diagnosed with mild multilevel degenerative disc disease and reported that her pain has returned and is now worse than it was before the radio frequency ablation. (Tr. 280-81.) She also noted weakness in her legs. (*Id.*)

On May 18, 2007 and September 25, 2007, Valdez received a Physical Residual Functional Capacity ("RFC") Assessment from a non-examining state agency physician and was diagnosed with lumbar spondylosis without myelopathy, degenerative disc disease, myofacial pain, and myalgia. (Tr. 268-74; 297-304.) The assessments state that Valdez can lift ten pounds frequently and can sit, stand, or walk about six hours in an eight hour day. (*Id.*)

3

On August 3, 2007, a physical therapist at Parkland noted that Valdez has a poor understanding of her medical history. (Tr. 400.) On September 14, 2007, Plaintiff was diagnosed with radio frequency lesioning. (Tr. 292.) Her prescription for Gabapentin was discontinued and Pregabalin was started. (*Id.*) On September 28, 2007, Valdez was given a blue handicapped parking placard. (Tr. 295-96.)

During 2008, Valdez visited Parkland hospital eleven times and was diagnosed with degenerative joint disease, annular fissure, radiculitis, myofascial syndrome, and lumbar spondylosis. (Tr. 373-96; 420-23.) She reported falling often due to weakness in her right side. (Tr. at 385.) Plaintiff was prescribed Citalopram, Elavil, Celebrex, Gabapentin, Hydroxyzine, Prednazone, Tizanidine, Topamax, Lyrica, and Amitriptyline during this time. (Tr. 371.) An MRI revealed a disc bulge at L5-S1. (Tr. at 384.) On September 19, 2008, the doctor scheduled Plaintiff for a median nerve branch block procedure. (Tr. 375.)

In 2008, Valdez was also diagnosed as morbidly obese at 313 pounds. (Tr. 410-14.) Plaintiff informed doctors that she is seeking food for comfort and does not think her depression medicine is working. (*Id.*) She was then prescribed new medication for insomnia and depression. (Tr. 407-09.) On October 29, 2008, her weight had increased to 326 pounds. (Tr. 421.)

In 2009, Valdez was again diagnosed with lower back pain and lumbar radiculitis. (Tr. 425-35.) She was scheduled for more injections in February and prescribed Tizanidine, Hydrocodone, Naproxen, and Amitriptylene. (*Id.*) Her Gabapentin was again increased. (*Id.*)

3. Plaintiff's Hearing

Plaintiff was represented by counsel at the March 31, 2009 hearing. (Tr. 24.) During her testimony, Plaintiff described how her back pain has hindered her ability to work. She stated that she was laid off from her seasonal job at a local printing company because the company did not want to be responsible for her medical issues. (Tr. 47.) She had previously requested a desk job and had to rotate between sitting and standing every 15-20 minutes to keep her pain at a manageable level. (Tr.

4

27-31.) After being laid off, she began working at Church's Chicken but stopped after three days because standing was too painful. (Tr. at 27.) Plaintiff described the pain she experiences as a jabbing pain that shoots down her left side and creates numbness. (Tr. 30.) She also stated she has pain in her heels and on the front of her foot. (Tr. 40.) She testified that her pain has progressed over time and that she cannot walk one block without sitting down. (Tr. 46.) Plaintiff testified that the procedures she has undergone alleviated the pain on her right side but have not helped the pain on her left. (Tr. 30.)

Valdez also testified about her depression. She stated that she cries uncontrollably, does not want to get out of bed, and thinks about ending her life. (Tr. 37-38.) She has kept her depression to herself for almost two years and only revealed this information to her doctors because her mother advised her to disclose everything she is experiencing. (Tr. 39.) She had not been to a mental health doctor prior to the hearing. (Tr. 36.) However, she has been taking depression medicine, and the combination of her depression medicine with her pain medicine makes her sleep. (Tr. 34.) She also believes the combination of drugs has contributed to her weight gain. (Tr. 35-36.) She thinks the weight gain may also be a result of her depression. (*Id.*)

Finally, Plaintiff testified that she lives in her parents' home and is able to drive when she needs to. (Tr. 25-26.) During the day, she cleans, cooks dinner, does laundry, feeds the dogs, and makes her bed. (Tr. 42-43.) She is able to bathe and dress herself with some difficulty. (*Id.*) She sometimes goes to the grocery store, but she has to lean on the basket heavily. (Tr. 44.) She does not use a cane or any other assistive device. (*Id.*) She also has incontinence problems. (Tr. 51.)

*C. ALJ's Findings*

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2007. (Tr. 18.) Second, the ALJ found that Plaintiff has the severe impairments of lumbar spondylosis and obesity. (*Id*.) Third, the ALJ found that Plaintiff's impairments, considered individually or in combination, do not meet or medically equal one of the listed impairments in

5

Appendix 1 of the Regulations. (*Id.*) Fourth, the ALJ found that Plaintiff has the RFC to perform a full range of light work. (*Id.*) In making this RFC determination, the ALJ found that Plaintiff's medically-determinable impairments could reasonably be expected to produce the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible due to inconsistencies with the medical record. (Tr. 19.) Fifth, the ALJ found that Plaintiff has no past relevant work. (Tr. 20.) Sixth, the ALJ found that Plaintiff was 43 years old on the date of application, has a high school education, and is able to communicate in English. (*Id.*) Seventh, he found that transferability of job skills is not an issue. (*Id.*) Eighth, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that she could perform. (Tr. 21.) Finally, the ALJ found that the claimant has not been disabled, as defined by the Act, since April 13, 2007. (*Id.*)

### *D. Post-Hearing Medical Evidence*

On April 7, 2009, Valdez was diagnosed with bipolar II disorder and began receiving treatment through Metrocare Services. (Tr. 437.) The record notes that her condition is considered chronic and will require continued treatment. (*Id.*) On June 10, 2009, she underwent an assessment of her ability to do work-related activities. (Tr. 438-41.) The assessment determined that Valdez has suffered a substantial loss of an ability to maintain concentration, act appropriately in public, accept instructions and criticism from supervisors, behave in a stable manner, respond appropriately to changes in a work setting, and finish a normal work week without interruption from psychologically based symptoms. (*Id.*) She was again diagnosed with bipolar II disorder in addition to posttraumatic stress disorder. (*Id.*) The doctor noted that these disorders probably exacerbate the degree of disability Plaintiff experiences from her physical impairments. (*Id.*)

# II. ANALYSIS

## A. *Standard of Review*

A claimant must prove that she is disabled for purposes of the Act to be entitled to Social Security Benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the Regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at Step 5 to show that there is other gainful employment available in the national economy that the claimant is capable of

7

performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be shifted either by reference to the Medical-Vocational Guidelines of the Regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236, 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court turns to the merits of the case.

### *B. Issues for Review*

Plaintiff argues that: (1) the ALJ erred by failing to use the correct standard of severity when evaluating with respect to mental impairment or, in the alternative, substantial evidence does not support the ALJ's finding of nonsevere mental impairment; (2) substantial evidence does not support the ALJ's RFC determination; (3) substantial evidence does not support the ALJ's credibility determination; and (4) the Appeals Council erred by failing to consider new evidence submitted by Plaintiff.

### *C. Credibility Determination*

Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff's testimony was not entirely credible. When the claimant establishes the existence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of those symptoms to determine the extent to which they affect the individual's ability to do basic work activities. SSR 96-

7p, 1996 WL 374186, *2. This requires the ALJ to make a finding concerning the credibility of the claimant's statements about the symptoms and their functional effects. *Id.* "The ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). However, the ALJ must articulate credible and plausible reasons for rejecting subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994).

Here, the ALJ found that the statements of Plaintiff concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. The ALJ cited several reasons to support this determination. The ALJ noted that the diagnostic studies do not support the degree of pain alleged. He also pointed to progress notes that "demonstrated intact strength of 5/5 in her upper and lower extremities and no weakness in her hands, right arm, or bilateral legs" and noted that her treating physician reported the claimant "over-exaggerates her pain." (Tr. 19.) The ALJ recognized that Plaintiff was provided a handicap parking permit but also noted the treatment records that showed "normal gait and posture, intact muscle strength, and normal sensation." (Tr. 20.) He also noted Plaintiff's failure to seek mental health care. Finally, the ALJ observed that Plaintiff's symptoms have been treated conservatively. (*Id.*) Overall, the ALJ concluded that the medical record did not contain any objective evidence to support Plaintiff's subjective complaints. The Court finds that substantial evidence supports this decision.

### *D. Severity Determination*

In the Fifth Circuit, "an impairment can be considered non-severe only if it is a slight abnormality having such minimal effect that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, at 1102 (5th Cir. 1985). Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d at 1106.

Plaintiff contends that the ALJ used the incorrect standard of severity in his Step 2 determination. In support of this argument, Plaintiff points out that the ALJ referenced the standard set forth in the Regulations in one section of his decision and the *Stone* standard in another section of the decision. Plaintiff also argues that even if the ALJ applied the correct severity standard, substantial evidence supports a finding that Plaintiff has a severe mental impairment.

Although the ALJ in this case failed to cite the correct standard in the "Applicable Law" section of his decision, he did reference *Stone* twice in his "Findings of Fact and Conclusions of Law." (Tr. 16-20.) Based on review of the record, there is no indication that he failed to apply *Stone* to the facts of Plaintiff's case. Although Plaintiff testified to being severely depressed at her hearing, subjective complaints must be corroborated by objective medical evidence. *See Chambliss v. Massanari*, 269 F.3d 630, 522 (5th Cir. 2001). Plaintiff was consistently prescribed antidepressants, but, as the ALJ noted, her depression improved with medication (Tr. 20.). *See Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990) (stating that a condition which is controlled by medication is not disabling). The ALJ also noted that Plaintiff failed to seek mental health care, as recommended by her treating physician, and that treatment records in 2008 and 2009 showed "minimal mention of depressive symptomatology." (Tr. 20.) In fact, on February 28, 2009, Plaintiff was reported as presenting normal mood and affect. (*Id.*) Evidence shows she was able to perform normal activities of daily living, including dating. (Tr. 42; 411.) The Court also notes that Plaintiff testified she was able to work even when she had depressive symptoms. (Tr. 37-38.) Substantial evidence supports the ALJ's determination that Plaintiff does not have a severe mental impairment.

### *E. Residual Functional Capacity Determination*

The ALJ determined that Plaintiff has the RFC to perform the full range of light work. Plaintiff argues that substantial evidence does not support this decision. Specifically, she contends that her physical limitations prevent her from substantially performing the activities required for light work.

As noted above, the ALJ found that the evidence did not support the degree of functional limitation alleged by Plaintiff. The ALJ noted diagnostic studies that revealed only mild left disk bulge and degenerative changes in the lower back. Other treatment records from 2007 and 2008 showed only bilateral paraspinous tenderness and tenderness of the sacroiliac joints bilaterally. (Tr. 292.) The ALJ pointed to records that reported normal gait and posture, intact muscle strength, and normal sensation. (Tr. 20; 292; 398.) Furthermore, both RFC assessments performed by state agency physicians concluded that Plaintiff has the ability to perform a full range of light work. (Tr. 269; 298.) Treating physician records dated prior to the hearing do not contradict these assessments. Substantial evidence supports the ALJ's RFC determination.

### *F. Appeals Council Determination*

In conjunction with her request for review by the Appeals Council, Plaintiff submitted new medical evidence obtained after the hearing. (Tr. 438-41.) These records show a diagnosis of bipolar II disorder and posttraumatic stress disorder. (*Id.*) An assessment of Plaintiff's ability to do work-related activities opines that Valdez has suffered a substantial loss of an ability to maintain concentration, act appropriately in public, accept instructions and criticism from supervisors, behave in a stable manner, respond appropriately to changes in a work setting, and finish a normal work week without interruption from psychologically based symptoms. (Tr. 439-40.)

On February 16, 2010, the Appeals Council denied review, stating that "we considered the reasons you disagree with the decision and the additional evidence. . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 5-7.) Plaintiff appears to argue that because the Appeals Council included the new evidence in the administrative record, it was required to provide its specific reasons for denying Plaintiff's request for review.

The Regulations provide a claimant the opportunity to submit new and material evidence to the Appeals Council for consideration when deciding whether to grant a request for review of an

ALJ's decision. 20 C.F.R § 404.970(b). Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). A court considering that final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Higginbotham v. Barnhart*, 163 F.App'x 279, 281-82 (5th Cir. 2006).

Whether the Appeals Council is required to specifically address additional evidence in its decision is an issue unresolved by the courts. The Hearings, Appeals and Law Litigation Manual ("HALLEX") provides that the Appeals Council must "specifically address additional evidence or legal arguments or contentions submitted in connection with the request for review." HALLEX § I-3-5-1 (Sept. 8, 2005). However, Defendant contends that an Agency policy statement from July 1995 suspended HALLEX's requirement for "detailed discussion of additional evidence and for specific responses to contentions in denial notices." *See* I-3-5-90 Exhibit, 2001 WL 34096367 (Jul. 20, 1995).

The Fifth Circuit has held that violations of HALLEX constitute grounds for remand where prejudice results. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). Although HALLEX does not carry the authority of law, "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous that otherwise would be required." *See Hall*, 660 F.2d at 119.

Defendant correctly points out that in July 1995, the Office of Appellate Operations issued a policy statement "temporarily" suspending the Appeals Council's obligation to provide detailed responses to submissions of new evidence. *See* I-3-5-90 Exhibit, 2001 WL 34096367. However, it is unclear whether this policy statement is still in effect. Some courts have recognized the policy statement, while others have not. *Compare Bellard v. Astrue*, No. 09-1603, 2011 WL 13847, at *3-4 (W.D. La. Jan. 3, 2011) (finding that the Appeals Council violated HALLEX by failing to

specifically address the additional evidence), *and Speights v. Barnhart*, No. 04-003-D-M3, 2004 WL 3331910, at *8-9 (M.D. La. Nov. 30, 2004) (noting the existence of the agency memorandum but ultimately remanding the case because the Appeals Council failed to comply with HALLEX), *with Davis v. Astrue*, No. 3:10-CV-958-P-BH, 2011 WL 444776, at *10 (N.D. Tex. Jan. 7, 2011) ("the requirement has been temporarily suspended by a memorandum"), *and Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *8 (N.D. Tex. Jul. 31, 2010) ("the requirement has been temporarily suspended by a memorandum"). In *Newton v. Apfel*, the Fifth Circuit, without acknowledging the existence of the policy statement, found that the Appeals Council erred by violating the relevant provision of HALLEX. *See Newton*, 209 F.3d at 459.

The Court is unable to discern from the record presented whether or not the duty of explanation as set forth in section I-3-5-1 of HALLEX is operational or under suspension. However, the Court finds that determination of this issue is not key to resolution of the case. Even if the Appeals Council was required to specifically address the new evidence and failed to do so, the Court must still determine whether prejudice resulted from such error. Looking at the record as a whole, the Court finds that the Plaintiff suffered no prejudice.

The new evidence opines limitations far above those supported by the rest of the medical evidence. In fact, no other medical record mentions bipolar II disorder, posttraumatic stress disorder, or any mental limitations nearing those contained in the assessment of work-related abilities. If these opinions are meant to relate to the period after the ALJ's decision, the evidence is not material. *See Falco*, 27 F.3d at 164. To the extent these opinions are intended to relate to the period prior to the ALJ's decision, they are completely unsupported by and inconsistent with the entire medical record. *See Leggett*, 67 F.3d at 566 (good cause for disregarding a physician's opinion includes statements that are otherwise unsupported). Furthermore, the new evidence is inconsistent with the Plaintiff's own testimony that she continued to work even with her mental condition and indicated that her mental state has not gotten worse since then. (Tr. 36-40.) In fact, she stated that she had been

experiencing the same mental health problems for over two years prior to telling her doctor about them and that she told the doctor because her mother encouraged her to do so, not because the condition had gotten worse. (Tr. 39-40.) She further indicated that she left her job due to her physical impairments and not her mental condition. (Tr. 27-30; 47.) The Court finds that had the Appeals Council specifically addressed the new evidence in its decision, the resulting outcome would not have changed. No prejudicial error occurred.

### III. CONCLUSION

The Court finds that no prejudicial error occurred and that substantial evidence supports the Commissioner's decision. Therefore, the decision of the Commissioner is hereby AFFIRMED.

SO ORDERED, June 15, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE